UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Patrick Phelps, Jr. and Matt Shaw, on behalf of themselves and other similarly situated,<br><br>　　　Plaintiffs,<br><br>-v-<br><br>Green Bay Dressed Beef, LLC,<br><br>　　　Defendant. | Civil No. 08-CV-0037 |

**MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF SERVICE PAYMENTS TO CLASS REPRESENTATIVES, AND FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES TO SETTLEMENT CLASS COUNSEL**

## INTRODUCTION

Two former Green Bay Dressed Beef, LLC ("GBDB") processing plant employees stepped forward to seek payment for all of the time they work, specifically the time spent donning and doffing required equipment and clothing, and for walking and waiting between plant areas before and during their shifts. These individuals sought this relief not only for themselves but also their fellow current and former employees. They retained Settlement Class Counsel who took the case with no promise of recovery or payment.

Settlement Class Counsel has now secured a favorable recovery and fair resolution for the Plaintiff Class, negotiating a settlement that requires back pay and a change in GBDB's pay practices. Under the settlement now before this Court, GBDB agrees to pay the Plaintiff Class $675,000 ("Plaintiff Fund") to resolve this dispute. It also agrees to modify its pay practices, which benefits not just the Plaintiff Class but also future employees. The settlement provides that the Class Representatives receive awards for their services to the Class, amounting to $2,500 each (subject to Court approval) or $5,000 in total from the Plaintiff Fund. Additionally, GBDB has agreed to compensate Settlement Class Counsel $500,000 for all costs, including costs associated with class notice and claims administration, as well as attorneys' fees (again, subject to Court approval). No member of the Plaintiff Class has objected to the requested attorneys' fees and costs, or to the proposed service awards. (Affidavit of T. Joseph Snodgrass ("Snodgrass Aff.") ¶ 9). Because the settlement is fair, reasonable, and adequate, Settlement Class Counsel respectfully moves the Court for an order granting the requested awards.

## BACKGROUND

On January 30, 2009, the Court issued an Order granting preliminary approval of the parties' proposed Settlement. Preliminary Approval Order (ECF No. 24). In that Order, the Court: (1) certified a FLSA Class and a Rule 23 Settlement Class, and appointed Zimmerman

Reed, PLLP and Larson • King, LLP as Settlement Class Counsel; (2) preliminarily approved the Settlement Agreement under Rule 23(e) as falling within the range of reasonableness; (3) approved the form and content of notice; and (4) scheduled the Final Approval hearing for April 8, 2009. The Settlement Agreement authorizes Settlement Class Counsel to petition the Court for attorneys' fees, costs, and expenses up to $500,000. (Settlement Agreement ("SA") at ¶8 (ECF No. 23-1)). The agreement also authorizes Settlement Class Counsel to petition the Court for a class representative service award for each of the two Class Representatives, in the amount of $2,500 each. (*Id*. at ¶6). As stated in Plaintiffs' memoranda supporting final approval of the settlement, which is incorporated here by reference, the requested amounts are reasonable in light of the overall settlement. (*See generally* Memorandum in Support of Final Approval of Settlement (filed concurrently with this Motion)).

While this litigation was resolved without protracted litigation, Plaintiffs and their counsel nonetheless faced considerable risk in a case that involved hotly contested allegations and complex issues of fact and law. Settlement Class Counsel utilized its expertise in this specialized area of the law to efficiently handle this case, prompting Defendant to realize that early resolution was appropriate. The Named Plaintiffs agreed to serve as representatives for over one thousand current and former GBDB employees. They reviewed pleadings and communicated with Settlement Class Counsel.

Plaintiffs respectfully suggest that the value of the settlement and the resolution of the complex issues present in the litigation are the result of the experience and focus of Settlement Class Counsel. Settlement Class Counsel completed the following important tasks during the pendency of this case:

1. Drafted a complaint and amended complaint following a diligent investigation into the facts surrounding GBDB's pay practices;

3

2. Responded to inquiries from putative Plaintiff Class members;

3. Along with experts in the field of biomechanical and industrial engineering, conducted plant inspections of each of Defendant's three Green Bay, Wisconsin processing plants and analyzed Defendant's pay practices;

4. Sampled and analyzed pay records to determine aggregate damage exposure;

5. Engaged in settlement negotiations spanning months to achieve a settlement benefiting the employees at GBDB's three processing plants before experienced mediator, Joseph T. Dixon.

In all, Settlement Class Counsel expended over 700 hours prosecuting this action on behalf of the Named Plaintiffs and the Plaintiff Class. (Snodgrass Aff. at ¶ 21). The current total lodestar of Settlement Class Counsel in this litigation as of March 30, 2009, is $262,998 and the total un-reimbursed costs and expenses total $75,398.98. After reduction of costs from the $500,000 fee request, Settlement Class Counsel seeks $424,601.02 for attorneys' fees. This represents a multiplier of approximately .62 based upon Settlement Class Counsel's lodestar of $262,988. (*Id.*) The Plaintiff Class fully supports Settlement Class Counsel's attorneys' fees, costs and expenses as well as the proposed service awards. In fact, no class member has voiced any opposition to these awards. (Snodgrass Aff. at ¶ 9).

## ANALYSIS

### I. Class Representative Service Awards Are Appropriate in This Case.

Named plaintiffs are routinely granted service awards as part of a class action settlement.[1] Service or incentive payments recognize the named plaintiffs' time and efforts, and the risks they undertake on behalf of a class. In addition to compensating class representatives for their time, effort, and inconvenience, service awards advance public policy by encouraging individuals to

---

[1] *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding two class representatives $55,000 each and three class representatives $35,000 each and citing cases).

come forward and take action to protect the rights of the class. Courts within the Seventh Circuit have routinely approved the award of service payments to class representatives for their assistance to a plaintiff class.[2]

In this case, the requested service payments reflect the efforts by each of the Class Representatives in gathering and communicating information to counsel and acting as the public face of the litigation. The Class Representatives have stayed abreast of the case and have performed a remarkably valuable service, both to class members and to the public as a whole. Further, had Plaintiffs not been successful at summary judgment or trial, the Class Representatives bore the risk of having to repay GBDB's taxable costs in this litigation—costs that represented the costs of defending a class, and not merely an individual suit. Thus, the payment of $2,500 to each of the Named Plaintiffs is well-deserved and should be awarded.

The reasonableness of the requested awards is confirmed by a comparison to the awards of service payments in other cases, which are frequently many times larger than the amounts requested here, both in absolute terms and as a proportion of the settlement. Numerous courts have approved class representative service awards of $15,000 and higher. For example, a federal court in Louisiana recently awarded $102,000 to class representatives in a case in which the

---

[2] *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award in light of benefit bestowed on class and risk faced and time spent pursuing case); Ex. A, Order for Final Judgment and Judgment, *Grabman v. Brakebush Bros., Inc.*, No. 07-CV-1031 (E.D. Wis. Sept. 25, 2008) (Stadtmueller, J.) (approving service awards of $5,000 each to five named plaintiffs); *Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 412 (E.D. Wis. 2002) (awarding $5,000 each for representative plaintiffs, where incentive was necessary to induce participation, plaintiffs participated in discovery and depositions, and plaintiffs consulted with attorneys during litigation); *see also Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. Jul. 31, 2006) (awarding $3000 incentive fee to class representative, recognizing that such awards "are designed to encourage individuals to become named plaintiffs"); *Follansbee v. Discover Fin. Servs., Inc.*, No. 99 C 3827, 2000 WL 804690, at *7 (N.D. Ill. Jun. 21, 2000) (approving $1000 award for named plaintiff and recognizing importance of incentives for class representatives); *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1266-67 (N.D. Ill. 1993) (approving $10,000 incentive award for each representative class plaintiff where they had each been deposed, monitored case and provided reaction to counsel regarding developments, and reviewed settlement proposals). All unpublished decisions are attached to the Affidavit of T. Joseph Snodgrass, filed concurrently herewith.

amount allocable to class members was $3.6 million.[3] The Seventh Circuit affirmed a trial court's award of $25,000 to the named class representative in an ERISA action resulting in a class recovery of more than $13 million.[4] Similarly, the court in the Pennsylvania *Linerboard* antitrust litigation awarded $25,000 to each of five class representatives.[5] Recently, this Court approved service awards of $5,000 to each of the named plaintiffs in a donning and doffing settlement.[6] Many other courts have not hesitated to grant service awards to representative plaintiffs who have expended substantial effort to pursue litigation and who have conferred benefits on all other class members.[7]

Class representative service awards are appropriate in this case, in light of the effort made by the Class Representatives to protect the interests of the Class as well as the substantial benefit the Class Representatives bestowed on the Class. No Plaintiff Class member has objected to these proposed awards. As a result, Settlement Class Counsel respectfully request that the Court approve a $2,500 service award to each of the Class Representatives to be paid from the Plaintiff Fund.

---

[3] *Camp v. Progressive Corp.*, No. 01-2680, 2004 WL 2149079, at *22 (E.D. La. Sept. 23, 2004).

[4] *Cook*, 142 F.3d at 1016.

[5] *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *18-19 (E.D. Pa. June 2, 2004).

[6] Ex. A, Order for Final Judgment and Judgment, *Grabman v. Brakebush Bros., Inc.*, No. 07-CV-1031 (E.D. Wis. Sept. 25, 2008) (Stadtmueller, J.); *see also* Ex. A, *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-cv-1018 (D. Minn. April 18, 2008) (approving service awards of $12,500 each to four named plaintiffs in donning and doffing settlement).

[7] *See e.g.*, *Sheppard v. Consol. Edison Co.*, No. 94-CV-0403, 2002 WL 2003206, at *6 (S.D.N.Y. Aug. 1, 2002) (three of six class representatives awarded $25,000 or more); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ($50,000 award); *Selzer v. Bd. of Educ.*, No. 82 Civ. 7783, 1993 WL 42787, at *4 (S.D.N.Y. Feb. 16, 1993) ($47,000 awards to each of two class representatives); *In re Revco Sec. Litig.*, Nos. 851 & 89 CV 593, 1992 WL 118800, at *7 (N.D. Ohio May 6, 1992) ($200,000 award); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 33 (E.D. Pa. 1985) ($20,000 award); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 service awards to each of six class representatives); *In re First Jersey Sec., Inc.*, MDL No. 681, 1989 WL 69901, at *7 (E.D. Pa. Jun. 23, 1989) ($25,000 award).

**II. Because the Settlement Was Not Collusive and Was Reached After Extensive Arm's-Length Negotiations, and Because GBDB Has Agreed to Pay Attorneys' Fees, Costs and Expenses, this Court Has Discretion to Approve the Award Without Extensive Inquiry.**

An award of attorneys' fees is committed to the sound discretion of the district court.[8] When a defendant agrees to pay fees and costs separately from the benefit for a Class, the Court possesses discretion to approve the petition without the need to conduct an intensive inquiry beyond the submission of counsel.[9] Instead, the reasonableness of an award can include evidence of an arm's-length negotiation or an agreement by the defendant to a certain amount that does not impact the relief afforded to the Class.[10]

The parties in this case worked diligently to reach a fair and reasonable settlement of the Plaintiff Class members' claims. The fee award was negotiated so as not to affect the amounts available to pay class member claims. There was no collusion and Settlement Class Counsel has served the best interests of the Plaintiff Class in all respects. Negotiations over nearly every detail of the settlement were vigorous. In addition, Defendant has agreed to pay, and Settlement Class Counsel has agreed to request, no more than a sum certain. Without this agreement, the onus would be on the Court to determine the appropriate fee award. With Defendant's agreement, and without evidence of impropriety, this Court has the discretion to approve the amount without further inquiry.[11]

---

[8] *Dutchak v. Central States, southeast and Southwest Area Pension Fund*, 932 F.2d 591, 596 (7th Cir. 1991).

[9] *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000).

[10] *See Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97-2784 RLE, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000) (a court's "acceptance of the fee request is facilitated by the fact that the fee amount was independently negotiated by the settling parties, and comes from a source that does not impact upon the total settlement fund that is available to the Class").

[11] *Lobatz*, 222 F.3d at 1148.

### III. Settlement Class Counsel Should Be Awarded $424,601.02 in Fees and $75,398.98 in Costs and Expenses.

The Fair Labor Standards Act and the Wisconsin Fair Labor Standards Act all seek to promote citizen enforcement by providing for a mandatory award of attorneys' fees if an employee prevails.[12] Because the parties have settled, and because GBDB has agreed to pay the Plaintiff Class' attorneys' fees, there is no contest as to whether Plaintiffs are the "prevailing party."[13]

In determining the proper amount of attorneys' fees to award in a case brought under these statutes, the starting point is counsel's lodestar, which is determined by multiplying the number of hours reasonably expended on the litigation by the timekeeper's hourly rate.[14] If the Court deems it appropriate, the Court can adjust the lodestar amount upward by use of a 'multiplier' that takes into account additional factors.[15]

Here, Settlement Class Counsel's lodestar represents the number of hours expended on the litigation multiplied by each firm's respective hourly rates. Settlement Class Counsel has been vigilant throughout this litigation in ensuring that the time spent on the case was necessary

---

[12] 29 U.S.C. § 216(b); Wis. Stat. § 109 (6) (7). Because these statutes contain mandatory fee-shifting provisions, there is no rule that the attorney's fee should be proportional to the amount of the client's recovery. Such a rule would violate the intent of Congress and the legislatures that enacted these statutes, because these provisions assure an employee that he can seek competent representation for any claim arising under the acts and seek redress for violations, no matter how small his actual damages. *See City of Riverside v. Rivera*, 477 U.S. 561, 577 (1986) (considering purposes behind civil rights statutes and their fee shifting provisions).

[13] Defendant has not admitted liability in the settlement.

[14] *See Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983).

[15] *Dutchak*, 932 F.2d at 596; *Parks v. Eastwood Ins. Servs.*, No. 02-507-GLT, 2005 WL 6007833 (C.D. Cal. June 29, 2005), *aff'd in part, rev'd in part and remanded by*, 240 Fed. Appx. 172 (9th Cir. May 9, 2007) (awarding over $2 million in fees in FLSA and California wage and hour law case, which included a 1.4 lodestar multiplier, after $1.2 settlement of overtime wage claims); *Anousouma v. Griestede's Operating Corp.*, No. 00-253, 2004 WL 504319, at *1 (S.D.N.Y. Jan. 7, 2004) (approving application of multiplier in action brought under FLSA and New York Minimum Wage Act); *Spencer v. Comserv Corp.*, No. 4-84-794, 1986 WL 15155, at *9-10 (D. Minn. Dec. 30, 1986) (applying 2.0 multiplier).

and not duplicative. Snodgrass Aff. at. ¶ 8. The hourly rates charged by each firm are justified by the firms' expertise in this type of litigation, and by the rates charged in their local communities for class action litigation. *Id.* at ¶¶ 10, 20-22.

### A. The Number of Hours Expended Is Reasonable.

The amount of time a lawyer decides to devote to various tasks in complex litigation is necessarily the product of highly-selective judgment, involving questions of strategy and tactics unique to that case, and is ill-suited to hindsight evaluation.[16] Here, the Affidavit of T. Joseph Snodgrass establishes that the two firms serving as Settlement Class Counsel have spent approximately 706.9 hours on this litigation as of March 30, 2009. Snodgrass Aff. ¶ 21.

In reaching this figure, Settlement Class Counsel has exercised billing judgment, reducing hours billed to exclude redundancies. Snodgrass Aff. ¶¶ 8, 10. Throughout the course of the litigation, Settlement Class Counsel took careful measures to avoid duplicative work and to promote efficiency in the prosecution of this matter. *Id*. at ¶ 8. Settlement Class Counsel made assignments in a coordinated fashion to ensure that talents were properly utilized and that information acquired through discovery was appropriately catalogued and incorporated into litigation (and later, settlement) strategy. *Id.* Senior attorneys were not utilized when they were not required and attorneys did not do work that paralegals could perform. In addition, Settlement Class Counsel worked hard to make sure that tasks were not duplicated between the firms because of the coordinated decision to use a cooperative, team approach from the inception of the case through settlement. Thus, the lodestar represents a reasonable, carefully-controlled number of hours spent by timekeepers with the appropriate levels of experience. *Id.*

---

[16] *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures"), *cert. denied*, 506 U.S. 1053 (1993).

Moreover, the lodestar reports time only through March 30, 2009, and thus does not include the hours of additional time the Settlement Class Counsel will continue to spend counseling members of the Plaintiff Class about the settlement, overseeing the distributions of payments from the claims fund, and monitoring the injunctive relief. Indeed, the Settlement Agreement obligates Settlement Class Counsel to respond to any proposed changes that GBDB makes in its policies and procedures during the two-year period of equitable relief. *See* Settlement Agreement at ¶ 7.a. and e.

### B. The Hourly Rates Are Reasonable.

The lodestar is calculated with current class action rates charged by Settlement Class Counsel. Snodgrass Aff. ¶ 21. This is appropriate given the deferred nature of counsel's compensation.[17] These hourly rates are market rates similar to those charged by firms with expertise in class action and other complex litigation, and have recently been approved by this Court as well as other federal district courts.[18]

### C. Settlement Class Counsel's Costs and Fees Request is Reasonable.

The total lodestar (fees only) accumulated by Settlement Class Counsel as of March 30, 2009, is approximately $263,000. *See* Snodgrass Aff. ¶ 21. Settlement Class Counsel seeks

---

[17] *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment, *see Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historic rates and adding a prime rate enhancement.").

[18] *See* Ex. A, Order for Final Judgment and Judgment, *Grabman v. Brakebush Bros., Inc.*, No. 07-CV-1031 (E.D. Wis. Sept. 25, 2008) (Stadtmueller, J.) (approving Larson · King and Zimmerman Reed fee, with lodestar calculated using similar range of hourly rates); Order on Final Judgment, *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-1018 (D. Minn. April 18, 2008) (same); Order on Final Judgment, *Russo v. NCS Pearson, Inc.*, No. 06-1481 (D. Minn. Nov. 30, 2007) (same); Ex. Order on Final Judgment, *Mehl v. Canadian Pacific Rwy.*, 4:02-cv-009 (D.N.D. Oct. 9, 2007) (approving Zimmerman Reed and co-counsel fee, with lodestar calculated using similar range of hourly rates); *see also In re Xcel Energy, Inc. Sec., Derivative, & "ERISA" Litig.*, 364 F. Supp. 2d 980, 989-90 (D. Minn. 2005) (approving contingency fee of 25% of benefit, and implicitly approving hourly attorney rates ranging from $200 to $650 in Rule 23 securities and ERISA class action).

$424,601.02 as a fee request. Thus, Settlement Class Counsel seeks a multiplier of approximately .62. However, this multiplier will obviously decrease as time is spent to prepare for the final fairness hearing, pay for attendant travel costs, and attend to claims administration and final distribution matters should the Court approve this settlement. *See* Snodgrass Aff. at ¶ 22.

Even if the final lodestar and costs are below the fee award, courts properly award counsel fees above their lodestar where experienced counsel properly negotiated an early settlement of complex litigation to the benefit of class members.[19] Federal district courts have approved the use of modest multipliers, of the type sought here, for wage and hour cases commenced under the FLSA and similar state laws.[20] In this case, Settlement Class Counsel's lodestar is reasonable considering the complex and wide-ranging nature of the case and the intricacy of the settlement negotiations. Indeed, the settlement was not easily achieved, and was the direct result of Settlement Class Counsel's expertise in wage and hour litigation and, in

---

[19] *See, e.g., In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005) (recognizing that "[b]ut for the cooperation and efficiency of counsel, the lodestar of plaintiffs' counsel would have been substantially more and would have required this court to devote significant judicial resources to its management of the case. Instead, counsel moved the case along expeditiously, and the court determines that the time and labor spent to be reasonable and fully supportive of the 25% attorney fee"); *Alexander v. Nat'l Football League*, No. 4-76-Civil-123, 1977 WL 1497, at *33 (D. Minn. Aug. 1, 1977) ("Not giving a substantial increment to the 'lodestar' for quality of work done would have the unfortunate result of giving to the most skillful and efficient attorneys who are most able to achieve an expeditious end to litigation, the least compensation"); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liability Litig.*, MDL No. 04-1708, 2008 WL 682174, at *12 (D. Minn. Mar. 7, 2008) (recognizing in non-class setting that "[a]n attorney fee award should not penalize counsel for settling at an earlier stage of the litigation.").

[20] *See Parks*, 2005 WL 6007833, *aff'd in part, rev'd in part and remanded by*, 240 Fed. Appx. 172 (9th Cir. May 9, 2007) (awarding over $2 million in fees in FLSA and California wage and hour law case, which included a 1.4 lodestar multiplier, after $1.2 settlement of overtime wage claims); *Anousouma*, 2004 WL 504319, at *1 (approving application of multiplier in action brought under FLSA and New York Minimum Wage Act).

particular, class actions involving donning and doffing-related issues in meat processing plants in particular. Snodgrass Aff. at ¶ 6, 10, 13.[21]

In addition to their accumulated lodestar, Settlement Class Counsel incurred a total of $75,398.98 in un-reimbursed costs and expenses to date. These costs and expenses reflect monies spent in copying documents produced in the case; telephone, postage and delivery costs; compensating experts and the mediator; negotiating the settlement; communicating with Plaintiff Class members; and communicating with and compensating Rust Consulting, Inc., the third-party claims administrator. All of these costs and expenses were reasonable and appropriate for a case of this size and duration. Settlement Class Counsel took steps to coordinate their work, and specifically to avoid duplicative costs. Snodgrass Aff. ¶¶ 8, 20. Experts were retained to observe and evaluate GBDB's pay practices, which informed Settlement Class Counsel's understanding of the amount of time employees spent donning and doffing, as well as their assessment of the aggregate damages exposure.

Finally, it important to stress that the requested fees and costs come from a source that has no effect upon the total settlement fund that is available to the Class.[22] That amount is fixed. While the fee and cost request of $500,000 slightly exceeds Settlement Class Counsel's lodestar and costs to date, Settlement Class Counsel will incur substantial additional time and costs in seeing this matter to conclusion and monitoring any changes in pay practices. Snodgrass Aff. ¶ 22. Accordingly, Settlement Class Counsel's request for $500,000.00 for attorneys' fees and reimbursement of costs and expenses should be approved.

---

[21] *See Anousouma*, 2004 WL 504319, at *1 (approving application of multiplier after early settlement "in large part due to the creativity and persistence of plaintiffs' counsel in accepting a difficult case on behalf of poor and immigrant delivery workers.").

[22] *See Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97-2784 RLE, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000).

## CONCLUSION

Plaintiffs respectfully request that in connection with granting final approval to the settlement of this Action, the Court grant Settlement Class Counsel's motion for an award of service payments to the class representatives and for an award of attorneys' fees, costs, and expenses to Settlement Class Counsel.

Respectfully submitted,

Dated: April 1, 2009.  **LARSON ● KING, LLP**

By: s\T. Joseph Snodgrass
T. Joseph Snodgrass (#231071)
Kelly Swanson (#330838)
Troy Tatting (#354156)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6510

**ZIMMERMAN REED, P.L.L.P.**
J. Gordon Rudd, Jr. (#222082)
Anne T. Regan (#333852)
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
Telephone: (612) 341-0400

*ATTORNEYS FOR PLAINTIFFS*

1253282